Good morning. May it please the Court, my name is Michael Harris and I am representing the appellants, Friends of Animals, and Predator Defense. On its face, this case is about a plan to remove, that is to literally shoot and kill, more than 1,600 barred owls for the purpose of assessing the impact of their removal on another species, the northern spotted owl, which has been imperiled for decades, primarily because of habitat loss. More broadly, this is also about the legal and ethical considerations when it comes to these types of human involvement in species-on-species conflict. This isn't a case in which barred owls were put in cages and brought to the Pacific Northwest and inadvertently or maliciously let loose. It's about a species that, because of changing habitat conditions, migrated across the country over a course of decades, and it now calls this area home as well. This is a phenomenon that scientists are telling us we may see happen more frequently in the future, so it's important that we try to understand the legal framework for this type of species migration. Before you get to the legal framework, it seems from the record that the Service is ensuring the survival of the species. I agree. Is that not true? I agree. One of the things I'd like to point out is that, you know, we don't have any specific direction from Congress on how to handle these type of species conflicts. What the Service is doing is utilizing a number of resources and statutes that were designed to protect and conserve other species. The problem that is raised by this particular conflict is both species have protections. So it is true that there is a long history of trying to protect spotted axe. But the barred owl is not threatened or endangered, is that right? That's right. It's protected, however, under the Migratory Bird Treaty Act, and that act does prevent its take and its killing, unless... But the act does seem to provide, consistent with the treaties, for this kind of scientific purpose. Right. And I want to talk specifically about why this type... First of all, I disagree for this type of scientific purpose. For scientific purpose, yes. Now, the parties agree that the barred owl is protected under the Mexican Convention, one of the four treaties that the Migratory Bird Treaty Act implements. What is the specific language in that convention that you're relying on? Yes, and I was just getting there. We're relying on Article 2, Paragraph A, of the Mexican Convention, that you can authorize the take of a protected bird when, quote, used for scientific purpose, for propagation, and for museum. Now, Fish and Wildlife Service will say, oh, scientific purpose, that's limitless. I mean, any scientific purpose, as they say, whether it's to advance the science of the bird taken, which we agree with, or they go further and say, or advance the science for any other species. Well, don't the fish and wildlife agencies of the parties have pretty broad discretion to act under that scientific purpose exclusion? Well, I think they have broad discretion in implementing the treaties. But Section 704 of the Migratory Bird Treaty Act also says that in exercising that discretion, you need to make sure that you are looking at the purposes and intent of the treaties themselves. And so the heart of our argument here is that you can't just take the two words, scientific purposes, out of context. Applying statutory construction, you know, the notion of no satiric associates, right? That you've got to say, what are these? This is a phrase here. Used for scientific purposes, for propagation, and for museums. What's the common thread there? What is the context and meaning of these words? Well, if there's going to be a take for museums, that obviously suggests a killing of the species. For its benefit. For what benefit? For gaining scientific understanding. What do museums do, particularly museums in 1936? They're displaying specimens to gather broader education about it, better scientific understanding about it, understanding of its conservation needs. What is propagation all about? You're going to have a better understanding of its breeding behaviors, understanding of its scientific and conservation needs. Those are limiting factors in those two terms that would, you know, which should be employed as well into the question of use for scientific purposes. Did I just understand you to say that for scientific purposes, you would limit that only to for propagation or for museums? As is interpreted in our... That's the way you're reading that sentence? As interpreted in Article 2, Paragraph A of the Mexican Convention. Those were, that term needs to be read in context. That it's for the bird, that the scientific purpose is for the bird, for generating scientific evidence for the bird. A similar... I don't see for the bird in that statute or in that provision of the treaty. Well, it says used for scientific purposes, propagation, and... No. You just left out the word for. Used for scientific purposes, for propagation, and for museums. That's correct. But those all are relating to the bird. This came up in another context in the Turtle Island Restoration Network case that's cited by the government in their brief, in which the court was asked to look at another set of exceptions for takes of migratory birds. That one is under regulation for special purposes, where it says you can authorize a take for the benefit of a migratory bird species, for scientific purposes, to protect an individual bird, or for other compelling justifications. And the court, using canons of statutory construction, said, well, there's got to be a common denominator here. Other compelling justifications can't mean for profit or for something like that. And using, you know, looking at the context and trying to figure out how those words relate, the court said, well, it's about the bird. The permit has to be about the bird. And that's what we're saying here. Article 2 of the Mexican Convention is authorizing scientific use, as well as museum use, and use for propagation for the benefit of the bird, not the benefit of us, or another species, unless not directly. How can it be for the benefit of the bird if you're going to shoot the bird and put it in a museum? I don't understand that. Well, because museums, if you ask a museum curator, I think they feel that they're contributing to conservation. They research the bird. Today, they use DNA samples. They contribute to conservation by killing the bird? Well, so that's interesting. So one of the things I think that the district court and our arguments below, we're not defining conservation as protecting the bird, keeping it alive, making sure it doesn't go extinct, the types of things maybe the Endangered Species Act would do. We believe conservation also means understanding the bird. I mean, we wouldn't be able to conserve species very well if we didn't have the scientific understanding of their needs, their habitat, their DNA makeup, their breeding needs, and so forth. Museums have contributed to that greatly. I mean, I've been involved in cases where expert witnesses on species conservation were museum curators and researchers for the museums. So they do contribute to the conservation of scientific understanding, as would some people say zoos do as well. It's not an entertainment or a for-profit activity. There is serious science that occurs within the walls of museums. So our take is that you really need to look at the actual language and ask yourself, what were the drafters of the Mexican Convention in 1936 intending when they put in that phrase, used for scientific purposes, comma, for propagation or for museum? Were they really talking about taking birds for scientific study that has nothing to do with that bird itself? And we just don't think that you could read it that way if you want to make sure all those words connect and fit together. Now, I'll move on to another argument that was made in the district court and which actually makes up a good portion of the district court's opinion, is that, well, isn't the purpose of the Migratory Bird Act to keep a supply of these birds so we could use them? And that's not totally accurate. In the Mexican Convention, there is two articles at issue here. Article 1 and Article 2. And the district court conflates those articles. Article 2, which we would like the court to focus on, is really the protective teeth of that treaty and then sets out these limited exceptions, like the one in paragraph A. Article 1 of the treaty sets out broad uses of certain birds for food, sport, commerce, and industry. The barred use is not penalized for any of those, nor is this permit issued for that. What the district court does on page 21 of her opinion is to sort of say, oh, the purposes of the treaty is for sport, food, and science. But science isn't in Article 1. What the district court has done is taken a narrow exception of the protections in Article 2 and made it into one of the broad purposes for maintaining sustainable populations of birds in Article 1. But that's not how they read together. Article 1 and Article 2 have commonalities and work together, but they have separate functions and goals. And she conflated those goals in her opinion. I'd like to move on about the regulations, too. I'm going to ask you, what about the regulations that have been adopted to interpret the act? Right. They're going to put a great emphasis on the regulations. But the regulation issue, CFR 2123, scientific collection permits, it's not an interpretive regulation. It doesn't have an interpretation in it. It parrots various provisions of the treaty. You know, it says scientific permit, scientific use, scientific purpose. It doesn't define that. Well, you have to go back a little bit further. You have to go back to the statute, 16 U.S.C. Section 704, which gives the Secretary the authority to promulgate regulations for a take consistent with the treaties. Consistent with the treaties. Right. Consistent with the treaties. Right. And then you have to go to 21.11, 50 CFR 21.11, which says no person shall take except pursuant to a permit. Right. Okay. And then you go to the permit. It says permit requirement. A scientific collection permit is required. But that doesn't offer any definition of what a scientific purpose is under Article 2 of the Mexican Convention, let alone any of the other conventions. It's just sort of saying whatever that scientific permit is. Well, but they've issued a permit here for this particular scientific purpose. Why isn't that? Well, because it's, again, it's subject to the provisions of the treaties. I guess what I would say in the context of Chevron, what I'm arguing here is two things. I don't really think that the regulation provides any, I mean, it's in their own admission, it was an omission, that it doesn't include anything. It doesn't include any limiting factors or it doesn't even discuss what they believe the treaties mean. But I would also argue that to the extent there is any definition here that has come up through the regulatory process, it's just an unreasonable one. It's just inconsistent with Article 2, paragraph A, when you don't just take the word scientific purpose out of context. Well, they get any deference to their interpretation of the statute through these regulations and through issuance of the permit for this purpose? Okay. So they did issue a definition just for this purpose, right, on August 29, 2014, one year after the permit was issued, a permitting process that this Court has already said generally doesn't produce interpretations with the force of law. But regardless of that, the permitting process itself didn't even have a single sentence in any decision-making document trying to explain why this was a scientific purpose for purposes of the Mexican Convention. It wasn't until after the permit was issued, after we initially commenced our litigation, that they came out with a memorandum that was never part of a public process that says, oh, by the way, we're going to define it to mean whether it benefits the species itself, which we think that's what the intent of the Mexican Convention was, or if it benefits any other species. That just doesn't hold the force of law to give deference to. But again, if you want to look at it as persuasive, that's fine, but you have to go back to the treaty. I think this Court has to convince itself that this treaty doesn't place limits on scientific purpose, and we would say it does. Do you want to save some time for rebuttal? Yes, I do. Thank you. Okay. Thank you. May it please the Court. My name is Rachel Herron on behalf of the U.S. Fish and Wildlife Service. Friends of Animals is asking this Court to read into the Migratory Bird Treaty Act and the Conventions, a requirement that does not appear in the text and that is not necessary to accomplish the law's intent. The Fish and Wildlife Service thinks that for these reasons it is self-evident that the Conventions and Act contain no such requirement, and we think that this Court can agree with that interpretation under any deference framework or under no deference framework at all. Unless this Court has a particular place they'd like to start, I want to respond to just a couple of points that I heard Council for Friends of Animals make up here. I take it that the Fish and Wildlife Service concedes standing here? Yes, Your Honor. We haven't challenged it. Okay. So I want to start by saying that a few of the sort of close readings of the Mexico Convention that I heard Council give just now do not appear anywhere in their briefing for this case that I am aware of. In particular, I'm talking about the suggestion that scientific use as used in the Mexico Convention should be read in light of the phrases that follow. We do, however, agree that the Mexico Convention is the one that matters here. That being said, we don't think that there's any reason the Court needs to be troubled by that argument. Well, should we read it the way he's suggesting? No, Your Honor. I don't think you should. And I think — Pardon me. You will concede, I think, that the normal canons of statutory interpretation should be used to interpret the Mexico Convention, correct? Yes, to the extent — And Mr. Harris was quite proper in citing one of them, which is Socio-Sinocitor, birds of a feather fly together. So you should take words in the context in which they're used. That's correct. We have no quibble with the idea that context matters. So scientific purpose, propagation, and museum use, how does that not limit scientific purpose to propagation and museum use of this species? Well, Your Honor, I don't think that — I certainly don't think it needs to be read that way. I mean, this could be read, I think, as a series of three different options, scientific use, museum, or propagation. Propagation of any species, because the whole point of your effort here is to preserve the spotted owl propagating by not allowing the barred owl to eat it. Or to otherwise interfere with its habitat. So yes, I think it could be read consistent in that way. But I also think that it's simply not necessary to assume that scientific use is limited only to those two things. The only other point that I would make, unless Your Honors have other questions, is that the Migratory Bird Treaty Act, despite what I think counsel indicated, is about managing use, not about prohibiting use. And a lot of what Friends of Animals is arguing here depends for its force on the idea that there will be no limit to the use if this particular bird is used. Any particular limit that doesn't appear in the text is read into the text. However, that is simply not the case, because there is a more direct limit that the service adhered to in this case, which is that the take, for whatever scientific purpose is being authorized, cannot be at a level that will imperil the species being taken. And Friends of Animals has not provided any explanation of why that backstop isn't sufficient to safeguard against the concerns about excessive exploitation that they voice in their brief. So because there is no textual hook for their requirement and because we think there is no need to read that requirement in in order for the Act's purposes to be fulfilled, we would ask this Court affirm. Any questions? Thank you, Your Honors. We will submit otherwise. Okay. You had about a minute and a half. Okay. Thank you. I mean, I would just say we clearly think there's a textual hook here, and it's in Article 2 of the Mexican Treaty, Paragraph A. We're asking the Court to look at that. Why doesn't propagation refer to both types of owls? I thought about that, too, right? It says that the species taken will be used for propagation. I think you've got to look at this a little historically, too. I mean, I don't know if the Migratory Bird Treaty Act was intended to address For scientific purpose, propagation, or museum use, right? That's correct. So it could be propagation of the spotted owl as well as the propagation of the barred owl. If you took it individually, I think you might. Just like if you took the words scientific need, you could read them as much as you want into it. But let's start with museum, though. How are you taking the species for museum purpose to benefit another species? That's another purpose. But, as you said, they need to be read in context, and there's some common denominator among those. And the common denominator appears to be that the species taken is being directly used for those activities. And, you know, if you look at the government's own proffered explanation, it gets the first part right, used for the benefit or scientific understanding of that species. The rest of it is just sort of, okay, is that really what the drafters meant when they enacted these conventions or not? I see my time is up. Thank you, counsel. Interesting case. We appreciate your arguments this morning. Safe travels.
judges: O'scannlain, Paez, Bea